IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-00134-PAB-KLM

TBM LAND CONSERVANCY, INC., a Colorado corporation,

     Plaintiff,

v.

NEXTEL WEST CORP., a Delaware corporation;
NEXTEL FINANCE COMPANY, a Delaware corporation;
NEXTEL COMMUNICATIONS, INC., a Delaware corporation; and
SPRINT COMMUNICATIONS, INC., a Kansas corporation,

     Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss Plaintiff's First, Third,

Fourth and Fifth Claims for Relief [Docket No. 10] filed by defendants Nextel West

Corp., Nextel Finance Company, Nextel Communications, Inc., and Sprint

Communications, Inc. ("Sprint") (collectively, "Nextel").  The Court has jurisdiction

pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

The complaint sets forth the following allegations, which, for the purpose of ruling

on the instant motion to dismiss, the Court takes as true.  *See Alvarado v. KOB-TV,*

*LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("We must accept all the well-pleaded

allegations of the complaint as true and must construe them in the light most favorable

to the plaintiff.").

Plaintiff TBM Land Conservancy, Inc. ("TBM") brings claims related to Nextel's termination of a "Communications Site Lease Agreement" (the "Site Lease").  TBM and one of Nextel's predecessor entities executed the Site Lease in March 1997.  Docket No. 3 at 1-2, ¶¶ 1, 2, 7-8.  The Site Lease granted Nextel[1] the right to use land in Clear Creek County, Colorado owned by TBM (the "Site") for "construction, operation and maintenance" of facilities "appropriate to the 'provision of communications services.'" *Id.* ¶ 3.  The Site Lease had an initial five-year term but gave Nextel the option to renew the Site Lease for four additional five-year terms.  *Id.* ¶ 4.  Nextel exercised the first, second, and third renewal options, the third of which ran from March 14, 2012 through March 13, 2017.  *Id.* ¶ 5.

Section 11.1 of the Site Lease provides, in pertinent part, that Nextel may terminate the Site Lease without further liability "after the initial five (5) year term, if [Nextel] determines that the Premises are not appropriate for its operations for technological reasons, including, without limitation, signal interference."  Docket No. 3 at 2, ¶ 6.  In July 2013, Nextel contacted TBM's vice president John Maslanik and informed him that Nextel intended to terminate the Site Lease "because it has identified that the site is no longer appropriate for its operations and will be decommissioned due to technological reasons, including outdated technology, and/or for economic reasons." *Id.* at 3, ¶ 11.  On August 8, 2013, TBM responded that Nextel had not provided documentation of a justification for asserting a right to terminate the Site Lease, and

---

[1]For ease of reference, although TBM at times refers to actions taken by Nextel's predecessor entity, OneComm Corporation, N.A., the Court will refer to all such actions as if they had been performed by Nextel.  *See* Docket No. 3 at 2, ¶ 8.

that other carriers located adjacent to the site had experienced no technological barriers to updating and operating their communications services.  *Id.* ¶¶ 13-14.  On August 27, 2013, Nextel responded that "today's customers demand data-centric multimedia communications, including simultaneous operation of multiple applications, all of which requires [sic] the 3G and 4G speeds of the newer CDMA, EVDO, WiMax, LTE and Network Vision technologies," and that Nextel had "determined that the features and functionality offered by these new technologies being deployed at other locations by Sprint render[] th[e Site] technologically obsolete."  *Id.* at 3-4, ¶¶ 16-17.  On February 7, 2014, Nextel sent a letter to TBM indicating that it had "vacated and surrendered possession of the Site to [TBM] in the condition required in the Agreement" and that "Nextel has no further rights or obligations under the Lease and no further right or interest with respect to the Site."  *Id.* at 5, ¶ 33.  TBM filed this action in the District Court for the County of Jefferson, Colorado on December 21, 2014,[2] alleging claims for breach of contract, injunctive relief, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations, and for attorneys' fees due under the Site Lease.  Nextel moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss each of these claims, other than the claim for injunctive relief, on the ground that Nextel's actions do not constitute a breach of the Site Lease.

## II.  STANDARD OF REVIEW

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might

_____

[2]Nextel removed this action on January 20, 2015.  Docket No. 1.

present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim.  Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted).  In doing so, a district court may take into account "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Alvarado*, 493 F.3d at 1215 (citation and quotation marks omitted).

The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves are plausible.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).

## III.  ANALYSIS

### A.  Breach of Contract

Nextel argues that TBM has not stated a claim for breach of contract because the Site Lease gives Nextel the right to terminate upon Nextel's determination that the Site is not appropriate for technological reasons.  Docket No. 10 at 6.  Nextel further argues that numerous courts in other jurisdictions have rejected claims identical to plaintiff's under similar lease terms.  *Id.* at 6-7.  TBM responds that the Site Lease requires Nextel to make a determination that the physical site, rather than the technology on the site, was inappropriate and that Nextel's stated reason for

terminating the lease did not reflect that Nextel made such a determination.  Docket No. 14 at 6.

The parties agree that Nextel's letter dated August 27, 2013 accurately reflects Nextel's reasons for terminating the Site Lease.[3]  Docket No. 10 at 6-7 (noting that Nextel's letter "described the technological reasons rendering the Site 'technologically obsolete'"); *see also* Docket No. 14 at 6 (noting that Nextel, in the August 27, 2013 letter, admitted that Nextel's reason for terminating the Site Lease was that "the facilities located on [the Site] had . . . become duplicative of transmission facilities situated on Sprint sites").  Thus, the only issue for the Court to determine is whether the reason that Nextel provided in the August 27, 2013 letter is a sufficient basis on which to plausibly state a claim.

The August 27, 2013 letter states, in relevant part:

> The Site's older 2G (second generation) iDEN technology performed well in the past for the voice and direct connect radio communications for which it was designed.  However, today's customers demand data-centric multi-media communications, including simultaneous operation of multiple applications, all of which requires [sic] the 3G and 4G speeds of the newer CDMA, EVDO, WiMax, LTE and Network Vision technologies.  Nextel has determined that the features and functionality offered by these new technologies being deployed at other site locations by Sprint renders this Nextel iDEN site technologically obsolete.

Docket No. 10-3 at 2.

---

[3]Nextel attaches the August 27, 2013 letter in its entirety to its motion to dismiss. *See* Docket No. 10-3.  The letter, which the complaint relies on, is properly considered in resolving Nextel's Rule 12(b)(6) motion.  *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.").

The relevant provision of the Site Agreement grants Nextel the right to terminate its lease without penalty "if [Nextel] determines that the Premises are not appropriate for its operations for technological reasons, including, without limitation, signal interference." Docket No. 10-1 at 5. TBM argues that the Site Lease requires Nextel to make a determination "that the *ground – just the ground*" covered by the Site Lease was inappropriate for Nextel's operations for technological reasons. Docket No. 14 at 6 (emphasis in original). Nextel responds that a number of courts have considered substantially identical claims and have held that, under language similar to that contained in the Site Lease, Nextel's determination that the technology installed on the relevant site was no longer needed to operate its communications network was sufficient to terminate the agreement. The cases that Nextel cites, *Seachase Condominium Owner's Ass'n, Inc. v. Nextel WIP Lease Corp.*, 2013 WL 6385911 (S.D. Ala. Dec. 6, 2013), *Marton v. Nextel Commc'ns of the Mid-Atl., Inc.*, Case No. CV-12-301 (Me. Super. Ct., York Cnty. Nov. 20, 2013),[4] and *Almany Investors, Ltd. v. Nextel S. Corp.*, 2015 WL 74091 (S.D. Fla. Jan. 6, 2015), are each distinguishable. In each of those cases, the agreement gave Nextel a right of termination upon its determination that the premises were inappropriate for "economic or technological reasons." *Seachase*, 2013 WL 6385911, at *3, *Marton*, Docket No. 10-5 at 4, *Almany*, 2015 WL 74091, at *1. Here, rather than "economic or technological reasons," the Site Lease only provides Nextel a termination right for "technological reasons." *See* Docket No. 3

---

[4]Attached to defendants' motion as Exhibit E.  *See* Docket No. 10-5.

at 2, ¶ 6.[5]  Since the agreements in *Seachase, Marton, and Almany* granted Nextel an additional basis to terminate the agreement not found in this case, none of those cases directly supports Nextel's interpretation of the Site Lease.

Two courts have considered Nextel agreements that, like the Site Lease, permit Nextel to terminate for technological (and not economic) reasons.  In *Lofty Enters., Inc. v. Nextel Commc'ns of the Mid-Atl., Inc.*, 2005 WL 2787563 (Mass. App. Oct. 26, 2005), the Appeals Court of Massachusetts held that, where a plaintiff challenged Nextel's determination that a site was "not appropriate for its operations for technological reasons," the plaintiff was "entitled to explore the basis for [Nextel's] determination to ascertain whether it had a basis in fact or, in other words, whether it was made in good faith."  *Id.* at *1.  The *Lofty* court reversed dismissal of a plaintiff's claim as premature where the record did "not establish that the plaintiff will be unable to prove on a more fully developed record that no good faith basis for such a determination exists in fact."  *Id.*  The Court finds that *Lofty* is distinguishable.  In that case, the court held that the plaintiff was entitled to take discovery to determine whether Nextel's stated reason "had a basis in fact or, in other words . . . was made in good faith."  *Lofty*, 2005 WL 2787563, at *1.  Here, the parties do not dispute Nextel's basis for terminating the Site Lease.  Rather, they dispute whether Nextel's stated justification was a "technological reason" sufficient to terminate the agreement.

---

[5]Although it is not relevant to the Court's analysis of Nextel's motion to dismiss, TBM states that, when it negotiated the Site Lease with Nextel, it insisted on removing Nextel's right to terminate for "economic reasons" from Nextel's standard agreement as a condition of entering into the contract.  Docket No. 14 at 5-6.

In *Pub. Storage v. Sprint Corp.*, 2015 WL 1057923 (C.D. Cal. Mar. 9, 2015), the court considered whether Sprint and Nextel's reasons for terminating a site agreement were sufficient where the lease allowed for termination upon Nextel's determination that the premises were "not appropriate for its operations for reasonable environmental concerns or for technological reasons, including without limitation, signal interference." *Id.* at *7.  The *Pub. Storage* court held that the agreement granted Nextel "broad, but not unfettered, discretion to terminate a lease upon finding that the leased premises are not appropriate for its operations for reasons actually related to its wireless network technology." *Id.* at *12.  The *Pub. Storage* court found that it was undisputed that Nextel "instituted a technological change in the Sprint-Nextel network, jettisoning Nextel's old iDEN technology in favor of a CDMA/EVDO/LTE platform" and that, "because the at-issue premises housed technology that was no longer needed due to the shift away from iDEN . . . and since other sites housing technologically-appropriate infrastructure already provided coverage in the affected areas, the at-issue premises were no longer 'appropriate for Sprint-Nextel's operations for technological reasons." *Id.* (alteration marks and ellipses omitted).  The court rejected the argument that the agreement required Nextel to show a premises-specific defect that rendered operations infeasible, reasoning that such an interpretation was at odds with the discretion that the agreement provided.  Specifically, the *Pub. Storage* court noted that, to terminate the agreement, Nextel must determine that the premises were not appropriate for "*its* operation," not that the premises are not appropriate for "*any* wireless network." *Id.* at *13 (emphasis in original).  Thus, the court held, Nextel had discretion to terminate the

agreement if the premises were not appropriate "for the wireless network that [Nextel] chooses to employ." *Id.*

The Court finds *Pub. Storage*'s reasoning persuasive.  The Site Lease provided Nextel with the discretion, after the expiration of the initial five-year term, to terminate the lease for any "technological reason" that it determined made the Site inappropriate for the operation of its network.  While such discretion was not unfettered, after plaintiff asked that Nextel justify its grounds for terminating the lease, Nextel provided its reason.  As reflected in the August 27, 2013 letter, Docket No. 10-3 at 2, Nextel's operations evolved away from the technology installed on the Site and Nextel had access to other facilities that were sufficient to satisfy its needs.  Plaintiff interprets this explanation as admitting that the reason that Nextel terminated the lease was "because the Nextel facilities situated on the Ground Lease were duplicative of facilities operated by Sprint."  Docket No. 14 at 9.  Accepting this interpretation as correct, the Court finds that it satisfies the "technological reason" requirement of the contract.

Neither party defines the word "technological."  Merriam-Webster's Dictionary defines "technological" as "of, relating to, or characterized by technology."[6]  However, TBM does not focus its breach of contract argument on the dictionary definition of "technological reasons" so much as it does on the assumption that the Site Lease requires Nextel to identify a deficiency with "the ground."  Docket No. 14 at 6.  TBM states that other communication network operators were able to install the very updated

---

[6] *Technological*, Merriam-Webster's Dictionary Online, http://www.merriam-webster.com/dictionary/technological (last visited September 8, 2015).

technology that Nextel claimed made the Site inappropriate on land that was adjacent

to the Site.  *Id.* at 3.  These arguments suggest that, under TBM's interpretation, Nextel

must demonstrate that continued operation of its network on the Site is impossible for

technological reasons.  The Site Lease, however, allows for termination upon Nextel's

determination that the Site is "not appropriate for [Nextel's] operations for technological

reasons[.]" *See* Docket No. 10-1 at 5.  This provision differs from the language of

Sections 11(1)(a) and (b) of the Site Lease, which incorporate more clearly the concept

of impossibility.  Section 11(1)(a) allows Nextel to terminate the Site Lease if it is unable

"to obtain any necessary license, permit or other governmental approval for

construction or operation of [Nextel's] facilities prior to December 31, 1997." *Id.*

Section 11(1)(b) allows termination if Nextel is "unable to occupy and utilize the

Premises" as the result of regulatory action, "including without limitation, a take-back of

channels or change in frequencies which makes it impossible for [Nextel] to operate its

business." *Id.*  This distinction is significant.  The Site Lease contemplates three

scenarios that allow Nextel a right of unilateral termination.  Two of those scenarios

require Nextel to demonstrate an inability to construct or operate its facilities.  The third

scenario, relevant here, requires Nextel only to demonstrate that the Site is "not

appropriate" for its operations.  *Id.*  Given this distinction, the Court rejects TBM's

implicit assumption that the relevant provision of the Site Lease requires technological

*impossibility*, rather than merely a reason "of, relating to, or characterized by

technology," before Nextel can terminate the agreement.  The Court finds that

"technological reasons" as used in the Site Lease includes Nextel's proffered reason:

that the technology on the Site had become obsolete.

Even if the Court found that the phrase "technological reasons" was ambiguous

and considered plaintiff's extrinsic evidence that the parties eliminated "economic

reasons" from the termination provision, the result would be the same.  The dividing line

between technology and economics is blurry in the wireless communications industry,

but the redundancy that Nextel cited had its origins in the integration of Nextel and

Sprint's networks.  Here, as in *Pub. Storage*, "since other sites housing technologically-

appropriate infrastructure already provided coverage in the affected areas," the Site

was no longer "appropriate for [Nextel's] operations . . . for technological reasons."

*Pub. Storage*, 2015 WL 1057923, at *12.  "[A] technological-reasons termination need

not be *solely* or *purely* technological."  *Id.* at *14 (emphasis in original).  The Site Lease,

like the agreement in *Pub. Storage*, allows Nextel "the choice to terminate rather than

(a) spend the money needed to overcome the technological defect, or (b) continue

paying rent on an unusable property."  *Id.*

Because the Court has determined that Nextel has provided a "technological

reason" for terminating the lease, Plaintiff has failed to state a plausible claim for

breach of contract.[7]

---

[7]Nextel argues, and TBM does not dispute, that if plaintiff's breach of contract
claim fails, its claims for tortious interference and attorneys' fees fail as well.  *See*
Docket No. 10 at 9-11.  Accordingly, Nextel's motion will be granted as to those claims.

### B. Implied Covenant of Good Faith and Fair Dealing

"Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing," *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), intended to "ensure that a party is not deprived of the fruits of a contract by the arbitrary or unreasonable actions of the other party." *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1104 (10th Cir. 2003). This duty "applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Amoco*, 908 P.2d at 498. "A party's justified expectations are violated if evidence indicates it would not have signed the contract had it known of the manner in which the party given discretion would exercise its discretion to determine open terms under a contract." *ADT Security Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007). The implied covenant cannot, however, be used to impose obligations that conflict with the express terms of the agreement or to "inject substantive terms into the contract." *Id*.

Nextel argues that TBM's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because TBM seeks to "write into the Site Lease . . . a requirement that Nextel West 'produce technological evidence/data which would establish . . . that the Site was/is no longer appropriate for its operations for technological reasons." Docket No. 10 at 9. The Court agrees. Plaintiff's good faith and fair dealing claim is premised on Nextel's failure, after repeated requests, to provide "evidence/data" that supports its determination concerning the technological reasons for terminating the Site Lease. *See* Docket No. 3 at 9, ¶¶ 59-61. Plaintiff

points to no contractual language that imposes such a requirement, and the Court discerns none.  The Site Lease gives Nextel the right to make a "determination" about the appropriateness of the Site.  Docket No. 3 at 2, ¶ 6.  While the implied covenant of good faith and fair dealing obligates Nextel to make that determination in good faith, the Site Lease does not impose any requirement that Nextel substantiate its determination with specific data.  Plaintiff's claim for breach of the implied covenant of good faith and fair dealing will therefore be denied.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants Nextel West Corp., Nextel Finance Company, Nextel Communications, Inc., and Sprint Communications Inc.'s Motion to Dismiss Plaintiff's First, Third, Fourth, and Fifth Claims for Relief [Docket No. 10] is **GRANTED**.  It is further

**ORDERED** that plaintiff TBM Land Conservancy, Inc.'s first, third, fourth, and fifth claims for relief are dismissed with prejudice.  Plaintiff's second claim remains pending.

DATED September 10, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge